**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALTHEA UDO-INYANG,** | : | **Civil Action No.** |
| **1235 Marlyn Road** | : | |
| **Philadelphia, PA 19151** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **1515 Arch Street, 8th Floor** | : | |
| **Philadelphia, PA 19102** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Althea Udo-Inyang (hereinafter "Plaintiff"), by and through her attorney, Koller

Law, LLC, bring this civil matter against the City of Philadelphia (hereinafter "Defendant"), for

violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans

with Disabilities Act of 1990, as amended ("ADA"), the Age Discrimination in Employment Act

("ADEA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices

Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, the City of Philadelphia is a local government a location and headquarters located at 1515 Arch Street, 8th Floor, Philadelphia, PA 19102.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADA, the ADEA, PHRA and the PFPO.

13. On or about October 17, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race, national origin, disability and age discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-00606 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated February 2, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one year after filing, but within two (2) years of the issuance of the Right to Sue in this matter, as it relates to her PHRA and PFPO claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was born in 1982.

21. Plaintiff is Black and of Jamaican descent.

22. In or around January 2016, Defendant hired Plaintiff.

23. The final position Plaintiff held with Defendant was Deputy City Solicitor in the Civil Rights Unit.

24. Plaintiff was well qualified for her position and performed well.

25. In or around May 2018, Plaintiff transferred from the Child Welfare Unit to the Regulatory Law Unit of Defendant.

26. In or around 2019, Plaintiff nominated her department mentor, Ji Jun (Asian), for a Mentorship Aware due to the overwhelming support and guidance she received from Jun.

27. In or around early 2022, Defendant promoted Jun to be Plaintiff's direct supervisor.

### PLAINTIFF WAS DIAGNOSED WITH A DISABILITY AND INFORMED JUN OF HER DIAGNOSIS IMMEDIATELY

28. In or around September 2022, Plaintiff was diagnosed with Breast Cancer.

29. Breast Cancer is a serious health condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

30. The major life activities affected by Breast Cancer, include, but are not limited to, normal cell growth.

31. Plaintiff immediately informed Jun of the diagnosis of her disability.

## JUN ISSUED PLAINTIFF A PERFORMANCE IMPROVEMENT PLAN ("PIP") IN RESPONSE TO PLAINTIFF'S DISABILITY DIAGNOSIS

32. Despite their prior mentor/mentee relationship, Jun responded to Plaintiff's diagnosis by immediately issuing Plaintiff a Performance Improvement Plan ("PIP").

## PLAINTIFF DISPUTED HER PIP AND DEFENDANT TRANSFERRED HER TO ANOTHER DEPARTMENT AS A RESULT OF THE DISABILITY DISCRIMINATION

33. Plaintiff disputed her PIP on the grounds that it was discriminatory in immediate response to her diagnosis.

34. Ultimately, Defendant agreed with Plaintiff.

35. Defendant granted Plaintiff a transfer from the Regulatory Law Unit to the Civil Rights Unit as a result of this disability discrimination.

## DEFENDANT DID NOT PROVIDE PLAINTIFF WITH PROPER SUPPORT AND TRAINING UPON HER TRANSFER

36. In or around May 2023, Plaintiff began her role in the Civil Rights Unit under Anne Taylor (Caucasian), Chief Deputy City Solicitor of the Civil Rights Unit and Plaintiff's direct supervisor, and Diana Cortes, Solicitor.

37. Upon starting in the Civil Rights Unit, Defendant failed to support Plaintiff in her transition.

38. For example, Taylor gave Plaintiff a laptop that continuously crashed.

39. This caused Plaintiff to lose all of her work on a regular basis.

40. Plaintiff complained about the laptop to Taylor.

41. Taylor proceeded to issue Plaintiff a new laptop, but the new laptop did not have access to the everyday databases and applications Defendant used for its work in the Civil Rights Unit.

42. Similarly, new, non-disabled attorneys in the Civil Rights Unit were paired with senior attorneys to train them in their new roles.

43. Plaintiff turned to Matthew Hubbard (Caucasian), Senior Attorney, for guidance in her new role as the only outlet for her training.

44. However, Hubbard frequently misguided Plaintiff on her assignments.

## **PLAINTIFF'S QUESTIONS WERE IGNORED OR MOCKED**

45. Plaintiff also asked questions as she was learning her new unit in the unit-wide group chat or by group email.

46. However, Plaintiff's emails were ignored or made fun of as being a "non-issue" or words to that effect.

## **PLAINTIFF WENT OUT ON A MEDICAL LEAVE OF ABSENCE TO HAVE AND RECOVER FROM SURGERY TO TREAT HER DISABILITY**

47. On or about August 10, 2023, Plaintiff had a mastectomy, as part of her treatment for her disability.

48. Plaintiff remained on a pre-approved medical leave of absence from on or about August 10, 2023 through on or about October 6, 2023.

## **PLAINTIFF WAS ASSIGNED A NEW SUPERVISOR**

49. In or around March 2024, Defendant promoted Danielle Walsh (Caucasian) to Chief Deputy City Solicitor of the Civil Rights Unit and to be Plaintiff's new supervisor.

50. As Walsh was previously on maternity leave prior to her promotion, Plaintiff had only previously met Walsh several times.

51. Walsh knew of Plaintiff's disability and her recent medical leave of absence.

## DEFENDANT ISSUED PLAINTIFF A POSITIVE PERFORMANCE EVALUATION

52. On or about March 13, 2024, Plaintiff met with Taylor, her former supervisor, and Walsh, her new supervisor.

53. Taylor and Walsh went over Plaintiff's performance review and did not identify any issues in Plaintiff's performance.

54. To the contrary, Taylor and Walsh applauded Plaintiff's effort to work well with her new colleagues in the Civil Rights Unit.

55. Plaintiff discussed her ongoing with Taylor and Walsh, including proving status updates.

## WALSH ASSIGNED PLAINTIFF TIME SENSITIVE TASKS DURING HER PRE-APPROVED VACATION, WHICH PLAINTIFF COMPLETED

56. On or about March 14, 2024 through on or about March 19, 2024, Plaintiff utilized her personal time off and left on a pre-approved vacation.

57. During this time off, Walsh called Plaintiff and directed her to complete a time sensitive issue on a case the two had discussed just before in the performance review meeting.

58. Plaintiff reminded Walsh that she did not have access to her work email on her vacation trip.

59. Nonetheless, Plaintiff completed the assignment as directed even though she was taking personal time off.

60. Plaintiff sent the assignment to Walsh via her personal email, as that was the only outlet she had access to on her vacation.

61. Hubbard informed Plaintiff that this was acceptable.

7

## WALSH FALSLEY ACCUSED PLAINTIFF OF COMMITTING AN ETHICS VIOLATION AND BERATED HER

62. In or around April 2024, Plaintiff had a one-on-one meeting with Walsh, during which Walsh accused Plaintiff of an ethics violation for sending an email to opposing counsel indicated she represented an officer before speaking to the officer.

63. This was a common practice in the office.

64. Plaintiff asked clarifying questions about how this posed an ethics violation given that the entire unit did this.

65. Walsh ignored Plaintiff's follow-up questions until a subsequent one-on-one meeting where Walsh apologized for scaring Plaintiff with the mention of the ethics violation only to then berate Plaintiff at the top of her lungs for the amusement of herself and others in the office.

## WALSH ACCUSED PLAINTIFF OF COMMITTING ANOTHER ETHICS VIOLATION DURING A UNIT-WIDE MEETING

66. Shortly afterwards, Plaintiff attended a unit-wide meeting.

67. During this meeting, Walsh called out Plaintiff and accused her of committing an ethics violation for sending a case sensitive assignment via her personal email.

68. Plaintiff reiterated that Hubbard directed her to do this.

69. Walsh continued to raise her voice, berate Plaintiff and embarrass her in front of her coworkers.

8

**PLAINTIFF INFORMED WALSH THAT SHE HAD FOLLOWED DEFENDANT'S PRACTICES AND HAD RECEIVED APPROVAL FROM HUBBARD REGARDING THE ALLEGED ETHICS VIOLATION**

70. Following this meeting, Plaintiff reminded Walsh via email about the circumstances of this practice and the approval she had received by Hubbard to enter appearances on behalf of officers before speaking with them.

71. Walsh ignored Plaintiff's email.

**DEFENDANT INVITED PLAINTIFF TO ATTEND THE MUNICIPAL LAWS ASSOCIATION DUE TO HER STELLAR PERFORMANCE**

72. Defendant invited Plaintiff to attend the Municipal Laws Association (IMLA) Conference in Washington, DC from April 18, 2024 through April 21, 2024, with Renee Garcia, Solicitor, Meghan Goddard, First Deputy, the Chief of Staff and three (3) other Civil Rights colleagues.

73. Defendant hand selected these employees, including Plaintiff, to attend the conference due to their stellar work performance.

**WALSH BERATED PLAINIFF FOR HER WORK PRODUCT, WHICH HAD BEEN APPROVED BY HUBBARD**

74. In or around May 2024, Plaintiff submitted discovery responses for an ongoing case to which she was assigned.

75. These responses were approved by Hubbard prior to submission.

76. On or about May 14, 2024, Plaintiff met with Walsh.

77. Walsh critiqued Plaintiff's discovery responses.

78. Plaintiff reiterated that the discovery responses had been approved by Hubbard, a more senior attorney.

79. Walsh continued to yell and berate Plaintiff for her work product.

9

80. Walsh was loud enough that others in the office could hear her berate Plaintiff.

81. Plaintiff complained to Walsh about her ethics violation critique during the unit-wide meeting in April.

82. Walsh apologized for making this comment to Plaintiff in a public setting.

**PLAINTIFF HAD A SURGERY DUE TO HER DISABILITY AND INFORMED WALSH THAT SHE WOULD TAKE A LEAVE OF ABSENCE AND WORK REMOTELY FOR TWO (2) DAYS IN ORDER TO RECOVER FROM HER SURGERY**

83. On or about May 23, 2024, Plaintiff had a minor, outpatient surgery for her disability.

84. Plaintiff informed Walsh of the surgery prior to the date it was scheduled.

85. Even though she had surgery scheduled the same day, Plaintiff attended a court hearing for her ongoing case the morning of her surgery, prior to going to the hospital to have the surgery done.

86. On or about May 24, 2024, Plaintiff worked on an ongoing case directly with Walsh.

87. Plaintiff reminded Walsh that she would be taking pre-approved personal time off from on or about May 25, 2024 through on or about May 29, 2024.

88. Plaintiff also reminded Walsh that she would then be working from home on her ongoing case assignments on or about May 30, 2024 and on or about May 31, 2024, as allowed by Defendant's policies.

89. Plaintiff told Walsh she would officially be back to work on or about June 3, 2024.

90. This would be when she would be returning to the office to answer work emails via her work computer.

**PLAINTIFF TOOK HER MEDICAL LEAVE OF ABSENCE AND WORKED REMOTELY FOR TWO (2) DAYS BEFORE RETURNING BACK TO THE OFFICE**

91. Plaintiff placed her email and automated work responses to "out of office" through June 3, 2024, when she would be able to respond to emails again.

92. Plaintiff continued to work on her ongoing cases, including on or about May 29, 2024, despite being on personal time off.

93. Plaintiff did not bill these hours because she was on pre-approved time off.

94. Plaintiff worked from home and billed her time on May 30, 2024 and May 31, 2024, completing ongoing case motions and documents.

## WALSH ACCUSED PLAINTIFF OF NOT WORKING REMOTELY FOLLOWING HER SURGERY

95. On or about June 3, 2024, Plaintiff returned to work in person at 7:00 a.m.

96. Plaintiff filed the motions she had worked on from home the days prior.

97. Plaintiff received an email from Walsh, requesting her to meet with Human Resources in person the next day.

98. Walsh accused Plaintiff of not working from home on or about May 30, 2024 and May 31, 2024.

99. Plaintiff reminded Walsh that this schedule had previously been discussed at their meeting on or about May 24, 2024.

## WALSH INFORMED PLAINTIFF THAT SHE NEEDED TO ATTEND AN IN-PERSON MEETING WITH WALSH AND HUMAN RESOURCES

100. At or around 4:30 p.m., hours later, Walsh informed Plaintiff via email that she needed to report to an in-person meeting in Walsh's office with Human Resources the following morning.

## PLAINTIFF REQUESTED TO HAVE THE MEETING VIA MICROSOFT TEAMS

101. Plaintiff immediately responded to Walsh's email and asked for the meeting to be changed to a Microsoft Teams video meeting instead.

102. Plaintiff requested this because she did not feel comfortable meeting with Walsh in person given Walsh's history of yelling and berating Plaintiff in prior in-person meetings.

103. Plaintiff logged off of her work computer and email for the day after responding to Walsh's email.

## PLAINTIFF WORKED REMOTELY AS PER DEFENDANT'S POLICY

104. The next morning, on or about Tuesday, June 4, 2024, Plaintiff work from home.

105. Importantly, all of Plaintiff's counterparts and superiors frequently worked from home on Tuesdays, including Walsh.

106. In addition, Defendant's policy required only two (2) in-person days per week.

107. Plaintiff logged into work at 9:00 a.m. from home.

## PLAINTIFF SAW AN EMAIL FROM WALSH AT NIGHT THAT SHE WAS REQUIRED TO ATTEND THE MEETING IN-PERSON

108. Plaintiff saw an email from Walsh from the night before, after hours stating she required Plaintiff to come in person on or about June 4, 2024, for an in-person meeting with Human Resources at 9:30 a.m. despite Plaintiff's request to have the meeting via Microsoft Teams.

109. Plaintiff responded to Walsh's email that since most of the office worked from home on Tuesdays, including Walsh, she did not think that this would be an issue.

110. Additionally, Plaintiff had requested that the meeting be held via Microsoft Teams during business hours the prior day.

## PLAINTIFF USED A SICK DAY DUE TO BEING UNABLE TO REPORT TO DEFENDANT IN TIME TO ATTEND THE IN-PERSON MEETING

111. Plaintiff could not physically make it to the office before 9:30 a.m.

112. Plaintiff requested to use a sick day because she could not meet Walsh's unreasonable demand to report to the office in order to attend the in-person meeting.

**WALSH DID NOT INFORM PLAINTIFF THAT A CASE ASSIGNED TO HER HAD SETTLED**

113. On or about June 5, 2024, Plaintiff reported to work in person.

114. Plaintiff saw an email from opposing counsel in a case assigned to her which notified Plaintiff the case settled.

115. Plaintiff was not aware that the case had settled.

116. Walsh had purposely not notified Plaintiff of the status of her assigned case.

117. Plaintiff had three (3) depositions scheduled for that case the next day, that she now had to abruptly cancel.

118. Plaintiff complained about this to Walsh via email.

119. However, Walsh ignored the email.

**PLAINTIFF EMAILED A COMPLAINT TO TAYLOR ABOUT NOT BEING NOTIFIED OF HER ASSIGNED CASE SETTLING**

120. On or about June 6, 2024, Plaintiff emailed Taylor at 5:30 a.m. to complain about her case settling without her knowledge.

121. At or around 1:30 p.m., Goddard responded to Plaintiff and requested an in-person meeting with her the next morning.

122. Plaintiff agreed to meet with Goddard.

**DEFENDANT TERMINATED PLAINTIFF**

123. On or about June 7, 2024, Plaintiff attended the meeting with Goddard, Taylor, Walsh and Mark Kinsey, Deputy Director of Administration.

124. Goddard abruptly terminated Plaintiff's employment, effective June 21, 2024.

125. The alleged reason for termination was refusal to meet with Human Resources in person and failure to respond to time sensitive emails.

126. Goddard also falsely accused Plaintiff of not working from home on her ongoing cases when she did.

127. Upon information and belief, up until about two (2) weeks prior to her dismissal, Plaintiff was the only Black attorney in the Civil Rights Division.

128. Plaintiff was 42 years old at the time of her termination.

## DURING PLAINTIFF'S EMPLOYMENT, DEFENDANT SUBJECTED PLAINTIFF TO DISCRIMINATORY CONDUCT BASED ON HER NATIONAL ORIGIN

129. Additionally, at one point during her employment, Plaintiff received a new desk with several Jamaican souvenirs in it.

130. Although Plaintiff did not know who put the souvenirs there, it was well known in the office Plaintiff's mother is Jamaican.

131. During a work gathering in front of Taylor, Plaintiff was asked if her mother was affiliated with the Jamaican Shower Posse Gang, or words to that effect.

## PLAINTIFF'S COWORKER COMMENTED THAT DEFENDANT WANTED TO TERMINATE OLDER EMPLOYEES

132. Additionally, shortly prior to Plaintiff's termination, an individual from the IT Department stopped by Plaintiff's office and told her "[Y]ou know they are getting rid of all us old folks" or words to that effect.

133. Defendant treated individuals outside of Plaintiff's protected classes more favorably than Plaintiff.

134. Defendant discriminated against Plaintiff due to her disability, race, national origin, and age and retaliated against Plaintiff for engaging in protected activity, *inter alia* taking a

medical leave of absence, in violation of the ADA, Title VII, the ADEA, the PHRA and the PFPO.

135. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

### COUNT I – DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

136. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

137. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

138. Plaintiff was qualified to perform the job.

139. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

140. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

141. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

142. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

143. The purported reason for Defendant's decision is pretextual.

144. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

145. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

146. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

147. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

148. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

149. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

150. Plaintiff was qualified to perform the job.

151. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

152. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

153. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

154. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

155. The purported reason for Defendant's decision is pretextual.

156. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

157. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

158. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – DISABILITY DISCRIMINATION**
**<u>PHILADELPHIA FAIR PRACTICES ORDINANCE</u>**

159. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

160. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

161. Plaintiff was qualified to perform the job.

162. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

163. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

164. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

165. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

166. The purported reason for Defendant's decision is pretextual.

167. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

168. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

169. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RACE DISCRIMINATION**
**<u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>**

170. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

171. Plaintiff is a member of protected classes in that she is Black.

172. Plaintiff was qualified to perform the job for which she was hired.

173. Plaintiff suffered adverse job actions, including, but not limited to termination.

174. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

175. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

176. Defendant discriminated against Plaintiff on the basis of race.

177. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

178. The reasons cited by Defendant for the above cited adverse employment actions that

18

Plaintiff suffered are pretext for discrimination.

179. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal

Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT V – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

180. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

181. The foregoing conduct by Defendant constitutes unlawful discrimination against

Plaintiff on the basis of her race (Black).

182. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages

as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT VI – RACE DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

183. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

184. The foregoing conduct by Defendant constitutes unlawful discrimination against

Plaintiff on the basis of her race (Black).

185. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages

as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT VII – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

186. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

187. Plaintiff is a member of a protected class in that she is of Jamaican descent.

188. Plaintiff was qualified to perform the job for which she was hired.

189. Plaintiff suffered adverse job actions, including, but not limited to termination.

190. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

191. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

192. Defendant discriminated against Plaintiff on the basis of national origin.

193. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

194. The reasons cited by Defendant for the above cited adverse employment action that Plaintiff suffered are pretext for discrimination.

195. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII – NATIONAL ORIGIN DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

196. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

197. Plaintiff is a member of a protected class in that she is of Jamaican descent.

198. Plaintiff was qualified to perform the job for which she was hired.

199. Plaintiff suffered adverse job actions, including, but not limited to termination.

200. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

201. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

202. Defendant discriminated against Plaintiff on the basis of national origin.

203. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

204. The reasons cited by Defendant for the above cited adverse employment action that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT IX – NATIONAL ORIGIN DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

205. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

206. Plaintiff is a member of a protected class in that she is of Jamaican descent.

207. Plaintiff was qualified to perform the job for which she was hired.

208. Plaintiff suffered adverse job actions, including, but not limited to termination.

209. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

210. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

211. Defendant discriminated against Plaintiff on the basis of national origin.

212. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment

actions that Plaintiff suffered.

213. The reasons cited by Defendant for the above cited adverse employment action that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT X – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

214. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

215. Plaintiff was born in 1982.

216. Plaintiff was qualified to perform the job.

217. Defendant terminated Plaintiff.

218. Defendant treated younger employees more favorably than Plaintiff.

219. Defendant has no legitimate non-discriminatory reason for its actions.

220. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT XI – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

221. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

222. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

223. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

22

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT XII – AGE DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

224. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

225. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

226. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT XIII – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

227. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

228. Plaintiff engaged in activity protected by the ADA.

229. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

230. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

231. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XIV – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

232. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

233. Plaintiff engaged in activity protected by the PHRA.

234. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

235. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XV – RETALIATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

236. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

237. Plaintiff engaged in activity protected by the PFPO.

238. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

239. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Althea Udo-Inyang, requests that the Court grant her the following relief against Defendant:

(a)    Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b)    Compensatory damages for, *inter alia*, mental anguish, humiliation, and emotional pain and suffering as well as any other expenses incurred by Plaintiff due to Defendant's unlawful employment practices;

(c)    Punitive damages;

(d)    Liquidated damages;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, Title VII, the ADEA, the PHRA and the PFPO.

(j)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.


## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.


RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC


Date: May 4, 2026May 4, 2026                    By:  */s/David M. Koller*
                                          David M. Koller, Esquire (Pa 90119)
                                          Jordan D. Santo, Esquire (Pa 320573)
                                          2043 Locust Street, Suite 1B
                                          Philadelphia, PA 19103
                                          215-545-8917
                                          davidk@kollerlawfirm.com
                                          jordans@kollerlawfirm.com

                                          *Counsel for Plaintiff*